IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 20-cv-01425-PAB

DAVID ADAM TEAGUE,

    Plaintiff,

v.

STATE OF COLORADO,
DEPARTMENT OF CORRECTIONS,
DENVER CITY JAIL, and
ADULT PAROLE SUPERVISION DIVISION,

    Defendants.

---

# ORDER

---

This matter is before the Court on David Adam Teague's Motion [for] "Emergency" Temporary Restraining Order [Docket No. 1][1] filed on May 18, 2020; the Motion [for] (TRO) Preliminary Injunction [Docket No. 31] filed on June 5, 2020; the Motion [for] Compassionate Release [Docket No. 18] filed on May 28, 2020; and the Motion [for] Compassionate Release [Docket No. 30] filed on June 5, 2020. Defendant City and County of Denver ("Denver") responded to Mr. Teague's first TRO and compassionate release motions on June 5, 2020. Docket No. 27. The Colorado Department of Corrections ("CDOC") responded on June 16, 2020. Docket No. 39.[2]

---

[1] Mr. Teague has filed a third motion for a temporary restraining order [Docket No. 14]. However, this motion appears to be identical to Mr. Teague's first motion for a temporary restraining order. Docket No. 1.

[2] The Court granted the CDOC an extension of time to respond to Mr. Teague's motions. *See* Docket No. 36.

I. **BACKGROUND**

Mr. Teague was brought to the VanCise-Simonet Detention Center ("DDC") in Denver, Colorado on March 30, 2020 on state charges of second-degree burglary, possession of burglary tools, and criminal mischief. Docket No. 27-2 at 1, ¶ 1; Docket No. 27-5 at 1, 3. On April 2, 2020, a judge released Mr. Teague on a personal recognizance bond in that case. Docket No. 27-4 at 1. However, Mr. Teague remained in custody on a parole detainer issued by the State of Colorado Parole Board. *See* Docket No. 27-3. Mr. Teague is currently being held by the Denver County Sheriff Department ("DSD") at DDC. *See, e.g.*, Docket No. 31.

When he entered DDC custody, Mr. Teague was screened for COVID-19. Docket No. 27-1 at 3, ¶ 7a. Mr. Teague indicated that he had no symptoms of COVID-19, no underlying health conditions that would make him more susceptible to complications resulting from COVID-19, and no known exposure to the virus. *Id.* He was placed in a two-person cell and then moved to an eight-person cell. Docket No. 27-2 at 3, ¶ 11. On April 14, 2020, 14 days after he arrived at DDC, Mr. Teague was placed in a "low-risk/resolved open pod," which are "utilized for inmates who have not demonstrated COVID-19 during initial intake housing or who have recovered from the virus." *Id.* After being exposed to the virus, Mr. Teague was transferred to a two-person cell "quarantine pod" on May 18, and transferred to a two-person COVID-positive cell on May 24 after he tested positive for the virus. *Id.*

Since arriving at DDC, Mr. Teague has had multiple meetings with medical staff. On April 3, 2020, Mr. Teague was screened by medical staff and reported a cough and

diarrhea.  Docket No. 27-1 at 3, ¶ 7b.  At this time, he tested negative for COVID-19. *Id.*  On April 8, a nurse completed a health assessment of Mr. Teague, during which Mr. Teague did not report any chronic conditions.  *Id.* at 4, ¶ 7e.  On April 24, 2020, Mr. Teague reported that he has asthma and requested an inhaler, but refused to see a nurse.  *Id.*, ¶ 7h.  Mr. Teague again requested an inhaler on May 4, at which time he reported he was having trouble breathing.  *Id.*, ¶ 7i.  A nurse evaluation of Mr. Teague produced negative findings for asthma.  *Id.*  When Mr. Teague again complained of asthma on May 7, a respiratory assessment for COVID-19 was completed.  *Id.*, ¶ 7j.  On May 12, after reporting lung pain and again requesting an inhaler, medical staff found clear lungs.  *Id.* at 5, ¶ 7l.

On May 21, 2020, after having been exposed to the virus, Mr. Teague underwent another COVID-19 assessment.  *Id.*, ¶ 7m.  He reported a history of asthma and stated that he was experiencing shortness of breath.  *Id.*  A COVID-19 test was completed.  *Id.*  Mr. Teague was evaluated again for asthma on May 23 after he reported burning in his lungs, wheezing, and mild asthma with exercise.  *Id.*, ¶ 7o.  He was given albuterol, which Mr. Teague indicated helped the burning sensation in his lungs.  *Id.*  On May 24, Mr. Teague's COVID-19 test came back positive.  *Id.*, ¶ 7p.

On May 31, 2020, Mr. Teague was sent to the emergency room after complaining of chest pain.  *Id.* at 6, ¶ 7r.  An EKG, blood work, and a chest x-ray showed normal results.  *Id.*  On June 1, Mr. Teague complained that he was not receiving adequate medical care.  *Id.*, ¶ 7s.  He was then moved to the medical unit at DDC to permit better access to medical staff.  *Id.*  On June 3, 2020, during a medical

examination, Mr. Teague reported that he was still experiencing intermittent lung pain, but that his symptoms were improving. *Id.*, ¶¶ 7t, 8. The examining physician reported a "COVID-19 resolution date" of June 8, 2020. *Id.*, ¶ 7t. The physician ordered that Mr. Teague be permitted to retain his inhaler to treat his symptoms. *Id.*

To combat the risks of COVID-19, DDC is taking the following measures. DDC is operating at approximately fifty percent capacity; while it is designed to hold 1,500 inmates, there were 772 inmates housed at DDC as of June 4, 2020. Docket No. 27-2 at 2, ¶ 4. Inmates entering DDC are given a mask before entering the facility and all incoming inmates are screened by medical staff and tested for COVID-19. *Id.*, ¶ 5. All DSD personnel have been given an N95 mask and are required to wear the mask when interacting with other individuals. *Id.*, ¶ 6. DSD has also eliminated all discretionary transfers at DDC; inmates are only transported out of their housing unit for virtual court appearances or for medical treatment. *Id.*, ¶ 7. In addition, all housing units at DDC are cleaned once per day by inmates. *Id.* at 2-3, ¶ 8. Common areas where inmates eat and recreate are cleaned, by inmates, three times per day. *Id.* DSD personnel clean any cell or housing unit that a COVID-positive inmate has occupied. *Id.* at 3, ¶ 9. Inmates are placed in "closed housing units" upon entering DDC or upon known exposure to COVID-19. *Id.*, ¶ 11.

Mr. Teague filed his first motion for a temporary restraining order ("TRO") on May 18, 2020. Docket No. 1. He requests that the Court order his release from DDC "[d]ue to the life-[threatening] conditions of confinement posed by the COVID-19 pandemic." *Id.* at 1. His accompanying complaint alleges violations of his Fifth, Eighth,

and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983.  Docket No. 5 at 3-4.  Among other things, he claims that he is wrongfully being held on his parole violations.  *Id.* at 5.  On May 28, 2020, Mr. Teague filed a motion for compassionate release indicating that he had been diagnosed with COVID-19.  Docket No. 18 at 1.  On June 5, 2020, Mr. Teague filed a second motion for temporary restraining order, again requesting that the Court order his release from DDC custody, Docket No. 31 at 1-2, as well as a second motion for compassionate release.  Docket No. 30.

## II.  LEGAL STANDARD

The standard for issuing a temporary retraining order is the same as that for issuing a preliminary injunction.  *See Wiechmann v. Ritter*, 44 F. App'x 346, 347 (10th Cir. 2002).  To succeed on a motion for a preliminary injunction, the moving party must show (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in the movant's favor; and (4) the injunction is in the public interest.  *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010); *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 US. 7, 20 (2008)).  "[B]ecause a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal."  *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009) (quotations and citation omitted).  Granting such "drastic relief," *United States ex rel. Citizen Band Potawatomi Indian Tribe v. Enter. Mgmt. Consultants, Inc.,* 883 F.2d 886, 888-89 (10th Cir. 1989), is the "exception rather than the rule."  *GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th Cir. 1984).

There are three types of preliminary injunctions that are disfavored: (1) injunctions that disturb the status quo, (2) injunctions that are mandatory rather than prohibitory, and (3) injunctions that provide the movant substantially all the relief it could feasibly attain after a full trial on the merits. *See Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1260 (10th Cir. 2005). In seeking a disfavored injunction, "the movant must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms." *Fish v. Kobach*, 840 F.3d 710, 724 (10th Cir. 2016) (quotations and alterations omitted); *see also Schrier*, 427 F.3d at 1259 (stating that such injunctions "must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course" (quotations omitted)). Mr. Teague seeks an injunction that alters the status quo. Namely, Mr. Teague seeks release from detention. Therefore, the motions for injunctive relief fall under the heightened standard for preliminary injunctions. *See Schrier*, 427 F.3d at 1260. Because plaintiff is proceeding pro se, the Court will construe his objections and pleadings liberally without serving as his advocate. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

### III. ANALYSIS

#### A. Injunctive Relief

##### 1. *Likelihood of Success on the Merits*

The Court first addresses Mr. Teague's likelihood of success on the merits. Because Mr. Teague seeks a disfavored injunction, he must make a "strong showing" on this factor. *Kobach*, 840 F.3d at 724. In his complaint, Mr. Teague alleges

violations of his Fifth, Eighth, and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983.  Docket No. 5 at 4.  He requests that (1) he be released from custody immediately; (2) his fees incurred in bringing this action be paid by defendants; (3) he be transferred to Missouri; and (4) an Officer Wyatt be removed from his position.  *Id.* at 18.  His motions for injunctive relief request that he be released from custody.  *See* Docket No. 14 at 1; Docket No. 31 at 1.

However, "release from custody is not an available remedy in a § 1983 action." *Brown v. Sedgwick Cty. Sheriff's Office*, 513 F. App'x 706, 707 (10th Cir. 2013) (unpublished); *see also Graham v. Waters*, 805 F. App'x. 572, 578 (10th Cir. 2020) (unpublished) (A "request for an injunction ordering [an inmate's] immediate release from custody is not a cognizable request for relief in this § 1983 claim.").  Thus, the Court finds that Mr. Teague has no likelihood of success on the merits of his § 1983 claim in obtaining the relief that he seeks – release from custody.

Moreover, the Court finds that Mr. Teague is unlikely to succeed on the substantive merits of his claim.  Mr. Teague asserts in his second motion for injunctive relief that he is being held on a parole detainer on an "illegal violation" and that this violates his due process rights.  Docket No. 31 at 3.  However, Mr. Teague does not set forth any basis or support for his argument that the parole hold is illegal or invalid.  *See id.*  Mr. Teague appears to argue that his due process rights were violated when his parole hearing was scheduled to be heard after the resolution of his pending criminal charges.  *See id.* (arguing that "Officer Wyatt set my parole hearing out for a year after my parole was over, or [until] the outcome of [his] Denver charges[,] which was the

7

illegal violation").

Mr. Teague is currently being held subject to a parole hold for parole violations stemming from his March arrest. Docket No. 27-3. Under Colorado law, "a community parole officer shall file a complaint seeking revocation of the parole of any parolee who . . . [i]s arrested and charged with . . . [a] felony."[3] Colo. Rev. Stat. § 17-2-103.5(1)(a)(II)(A). "A hearing relating to such revocation shall be held, unless a board member is advised that a criminal charge is still pending . . ., in which case *the hearing shall be delayed until a disposition concerning the criminal charge is reached*." Colo. Rev. Stat. § 17-2-103.5(1)(c)) (emphasis added); *see also Colo. Dep't of Corr., Parole Div. ex rel. Miller v. Madison*, 85 P.3d 542, 544-45 (Colo. 2004) ("The parole board must delay a revocation hearing pending a disposition in the underlying criminal case . . . when a parolee has been arrested for committing one or more of these limited offenses [set out in § 17-2-103.5(1)(a)(II)(A)]."). Thus, Mr. Teague is not entitled to a hearing on his parole revocation until a disposition has been reached with respect to the new criminal charges, and he cannot demonstrate that his parole hold violates his due process rights. The Court finds that Mr. Teague has failed to show a likelihood of success on the merits so as to warrant the issuance of a temporary restraining order.[4]

---

[3] Second-degree burglary is a felony offense. Colo. Rev. Stat. § 18-4-203(2).

[4] For these same reasons, Mr. Teague's second motion for a temporary restraining order will be denied to the extent that it can be construed as seeking a preliminary injunction. *See Carbajal v. Warner*, 561 F. App'x 759, 762 (10th Cir. 2014) (unpublished) (affirming district court's denial of prisoner's request for preliminary injunction because prisoner had "no likelihood of success on the merits").

### *2. Irreparable Harm*

In addition, the Court finds that Mr. Teague is not entitled to a temporary restraining order due to his failure to demonstrate that, absent a TRO, he will suffer irreparable harm. "To constitute irreparable harm, an injury must be certain, great, actual and not theoretical." *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003). The "party seeking injunctive relief must show that the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." *Schrier*, 427 F.3d at 1267 (quoting *Heideman*, 348 F.3d at 1189).

In his first TRO motion, Mr. Teague argues that, absent a temporary restraining order requiring his release, he will suffer irreparable harm if he contracts COVID-19. Docket No. 1 at 2; *see also* Docket No. 31 at 1 (Mr. Teague requesting that the Court "release [him] to safer conditions"). Unfortunately, Mr. Teague has since contracted the virus. Docket No. 27-1 at 5, ¶ 7p. "The purpose of a preliminary injunction is not to remedy past harm." *Schrier*, 427 F.3d at 1267. Accordingly, the issuance of injunctive relief would not prevent the harm that Mr. Teague sought to prevent.

Mr. Teague concedes that his request for relief is now "moot." Docket No. 33 at 1.[5] On June 8, 2020, Mr. Teague filed an additional "Request for Relief" form, which the Court construes as a motion to amend the relief requested in his motions for injunctive relief. Docket No. 33. Mr. Teague states that he would "like to modify each

---

[5] The Court notes that, as of June 3, 2020, Mr. Teague reported an improvement in his symptoms, and a physician reported Mr. Teague's "COVID-19 resolution date" to be approximately June 8, 2020. Docket No. 27-1 at 6, ¶ 7t.

9

of [his] request[s] for relief at this time." *Id.* at 1.  He requests that "each Respondent pay $10,000 a day starting from the time of [his] arrest so that this case out come [sic] is not fruitless." *Id.*

The Court denies Mr. Teague's request to modify his relief sought.  First, Mr. Teague implies that this additional request is being made, not to prevent irreparable harm, but to permit his claims to survive.  *See id.*  This is an improper basis on which to seek relief, as a temporary restraining order or preliminary injunction may only be issued to prevent irreparable harm.  *Little*, 607 F.3d at 1251.  Moreover, in his complaint, Mr. Teague does not request these money damages.  *See* Docket No. 5 at 18.  Instead, he seeks release from custody and costs associated with the filing of this lawsuit, among other things.  *Id.*  However, "[w]hen the movant seeks intermediate relief beyond the claims in the complaint, the court is powerless to enter a preliminary injunction."  *Means v. Lambert*, 2008 WL 483606, at *1 (W.D. Okla. Feb. 20, 2008); *see also Ala. v. United States Army Corps of Engineers*, 424 F.3d 1117, 1134 (11th Cir. 2005) ("[I]njunctive relief must relate in some fashion to the relief requested in the complaint.").  Finally, to demonstrate an entitlement to preliminary injunctive relief, a moving party must demonstrate that "he or she will experience harm that cannot be compensated after the fact by money damages." *First W. Capital Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1141 (10th Cir. 2017) (quotation omitted).  Mr. Teague's amended request for relief, to the extent it can be construed as a request for money damages, is an improper basis upon which to grant injunctive relief.  Accordingly, Mr. Teague's motion to modify his requested relief will be denied.

### B. Remaining TRO Factors

Mr. Teague must make a showing on each factor to demonstrate that he is entitled to a temporary restraining order. Because Mr. Teague has failed to demonstrate a likelihood of success on the merits or irreparable harm, the Court does not address the remaining TRO elements. See *Winter*, 555 U.S. at 23-24 (holding that "[a] proper consideration" of the balance of equities and public interest "alone requires denial of the requested injunctive relief" and, therefore, declining to address the likelihood of success on the merits); *see also Big O Tires, LLC v. Felix Bros., Inc.* 724 F. Supp. 2d 1107, 1121 (D. Colo. 2010) (declining to address every factor because "the resolution of them will have no bearing on the outcome").

### C. Compassionate Release

In addition to his motions for injunctive relief, Mr. Teague has also filed two motions for compassionate release. Docket Nos. 18 and 30. Mr. Teague requests that he be granted release from custody due to the COVID-19 pandemic. *See* Docket No. 18 at 4; Docket No. 30 at 1.

Section 3582(c)(1)(A) of Title 18 of the United States Code, the federal compassionate release statute, permits a district court to "reduce [a] term of imprisonment" of inmates in federal custody "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." Specifically, a court may order

an inmate's release if the court finds that "extraordinary and compelling reasons warrant such a reduction; . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. §  3582(c)(1)(A). However, Mr. Teague is in state custody as a parolee on a state offense, and the Court "does not have the authority to order a compassionate release from state custody, which is a matter of state law."  *Puerner v. Smith*, 2009 WL 4667996, at *2 (E.D. Wis. Dec. 3, 2009); *see also Williams v. Keiser*, 2020 WL 2028256, at *2 (W.D.N.Y. Apr. 28, 2020) (denying motion for compassionate release where the inmate was in state custody); *United States v. Tillisy*, 2020 WL 1904045, at *2 (W.D. Wash. Apr. 17, 2020) (same).  For these reasons, Mr. Teague's motions for compassionate release will be denied.

## V.  CONCLUSION

For these reasons, it is

**ORDERED** that the Motion [for] "Emergency" Temporary Restraining Order [Docket No. 1] is **DENIED**.  It is further

**ORDERED** that the Motion [for] (TRO) Preliminary Injunction [Docket No. 31] is **DENIED**.  It is further

**ORDERED** that the Motion [for] "Emergency" Temporary Restraining Order [Docket No. 14] is **DENIED** as moot.  It is further

**ORDERED** that the motion to modify requested relief [Docket No. 33] is **DENIED**.  It is further

**ORDERED** that the Motion [for] Compassionate Release [Docket No. 18] and the Motion [for] Compassionate Release [Docket No. 30] are **DENIED**.

DATED June 22, 2020.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge